IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

DARYL JONES, ALICE LAMAR, )
and SARAH ROMERO )
   on behalf of themselves and all others )
   similarly situated, )
                                       Plaintiffs, )
                                                       )   Case No. 14-cv-02112-CM-TJJ
v. )
                                                  )
WYANDOT INC., et al., )
                                                  )
                                       Defendants. )

**MOTION TO ENFORCE THE SETTLEMENT AGREEMENT OR IN THE ALTERNATIVE SET ASIDE THE SETTLEMENT AGREEMENT**

**I.    Background**

On or about January 26, 2015, the Court entered an order approving Plaintiffs' Unopposed Motion for Order Approving Collective Action Settlement (Doc. 33). In administering that settlement, Defendant seeks to reduce each opt-ins settlement recovery significantly[1] by disqualifying each opt-in from receiving damages for any week during the class period that they missed two or more hours of work during that week due to being sick or on paid vacation.[2] Class counsel disagrees with Defendants interpretation of the settlement agreement in that it was negotiated that the class would be paid for, forty-nine weeks a year rather than fifty-two, therefore vacation time and sick time was already accounted for. As such, Class Counsel moves for the Courts Order to Enforce the Settlement Agreement per Class counsels interpretation, or in the alternative, to set aside the settlement agreement.

---

[1] See Exhibit 1, Email from 3rd party administrator stating that total settlement was $188,454.00 but based on Wyandot's calculations of that amount $133,287.46 will revert to Wyandot.
[2] See Exhibit 2, spreadsheet provided by Wyandot showing all weeks worked by opt-ins and what weeks they will not be paid because of sick time or holidays.

## II.   Settlement Interpretation

Under Kansas law, a settlement agreement is a type of contract and is therefore governed by contract principles.  *Ferguson v. Smith*, 63 P.3d 1119, 1121 (KS. App. 2003).  The primary objective when interpreting written contracts is to ascertain the intent of the parties at the time they entered into the contract. *Daggett v. Bd. of Pub. Utilities of Unified Gov't of Wyandotte Cnty. Kansas City*, 263 P.3d 847,850 (Kan. App. 2001).  As a matter of commercial predictability, the law favors *reasonable interpretations*, and seeks to avoid "results which vitiate the purpose of the terms of the agreement to an absurdity."  *Waste Connections of Kansas, Inc. v. Richie Corp.*, 298 P.3d 250, 264-265 (Kan. 2013).

A court must first determine if the terms of a contract are clear or ambiguous.  *Carrothers Constr. Co. v. City of South Hutchinson*, 207 P.3d 231, 239 (Kan. 2009).  Where the language is clear and unambiguous, the intent of the parties "should be determined from the language of the contract without applying rules of construction."  *Id*.  More specifically, contract language should not be interpreted in a way that "isolates one particular sentence or provision." *Daggett*, 263 P.3d at 850.   Rather, contracts should be interpreted "in light of their peculiar provisions, and be construed, if possible, as consistent with every other provision and to give effect to it all."  *Id*.

### A.   The parties intended the (Exhibit 3, Settlement Agreement and Full Release of All Claims) to be the final; fully integrated agreement, and therefore the agreement should be interpreted using just the language of the settlement agreement.

Under section II (7) and Section III (M), both parties agreed that Exhibit 3 constituted the full and complete settlement.  Furthermore, under Section III (M), both parties agree that no other agreements have been made, except those stipulated within the agreement, and that the agreement cannot be amended, modified, or supplemented except by a written agreement entered

into by both parties. Because both parties unambiguously intended the agreement to be the complete and final written document, the agreement should be interpreted using merely the language of the contract.

> **B. The work week per year stipulation (49 and 98) clearly evinces Class Counsel's interpretation that sick days were not supposed to be excluded and line-itemed out from the settlement agreement.**

Class Counsel understood the principle purpose of the stipulation limiting the number of work weeks per year to forty-nine (49) over a one year period and ninety-eight (98) over a two-year period, so as to account for the days employees missed for sick leave and vacation. Had this not been the stipulations purpose, Plaintiff would not have entertained, nor agreed to reduce the number of work weeks in a year. Doing so, without justification, would have automatically reduced the settlement amount, and made no legal or logical sense for Plaintiff's.

The class action administration should have merely taken the number of weeks each employee worked—without excluding any weeks because of holidays or sick time—the stipulated amount per hour ($19.23), and the stipulated number of overtime hours per week (2), and entered the numbers into the Damages model attached to Exhibit 4, Notice of FLSA Collective Action Settlement.

### III.   Meeting of the Minds

> **A. Because both parties were mistaken as to what constituted a "full work week" there was not a meeting of the minds, and therefore no valid contract.**

To form a binding contract, there must be a "meeting of the minds" as to all of the essential terms. *Sidwell Oil & Gas., v. Loyd*, 630 P.2d 1107, 1110 (Kan. 1981). A meeting of the minds occurs when there is a "fair understanding between the parties which normally accompanies mutual consent and the evidence . . . show(s) with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract." *Id* at 1113 (holding

that where both parties are mistaken as to the meaning of the other, not contract should be held to exist).

Defendants interpreted the agreement differently than Plaintiffs. Specifically, Defendant Wyandot interpreted hours missed during a week for a national holiday and illness, so as to automatically exclude those weeks from being counted as a "full work week." In essence, Defendant Wyandot did not interpret the work week reduction from fifty-two (52) to forty-nine (49) to have accounted for the days employees missed for sick leave. Conversely, Plaintiff interpreted the reduction of the work week from fifty-two to forty-nine, to have been to account for the days employees missed because of sick leave. Hence, like the parties in *Sidewell*, the parties were clearly mistaken as to the meaning of an essential term of the settlement agreement—what constitutes a full work week. Because of the mistaken belief between the parties, there was no meeting of the minds between Plaintiff and Defendant Wyandot and therefore there was no binding contract.

WHEREFORE, Plaintiffs' request that the Court enter its' Order, ordering the third party administrator to pay Plaintiffs for all weeks worked, not just "approved workweeks" or in the alternative set aside the settlement and return the parties to their pre-settlement litigation posture.

Respectfully submitted,

HOLLINGSHEAD, PAULUS & ECCHER

/s/ Ryan M. Paulus_____
Ryan M. Paulus      D Kan. #78276
8350 N. St. Clair Ave. Ste. 225
Kansas City, Missouri 64151
Main (816) 581-4040
Facsimile (816) 741-8889
r.paulus@hpelaw.com
ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of July, 2015, a true and correct copy of the foregoing, along with a copy of this Certificate of Service was filed with the Courts electronic filing system which sent notice of the same to:

> Gregory P. Goheen
> ggoheen@mvplaw.com
> Teresa A. Mata
> tmata@mvplaw.com
> McAnany, Van Cleave & Phillips, P.A.
> 10 East Cambridge Circle Drive, Suite 300
> P.O. Box 171300
> Kansas City, Kansas  66117
> Tel. 913.371.3838
> Tel. 913.371.4722 - Fax
> ATTORNEYS FOR DEFENDANTS

Respectfully submitted,

Hollingshead, Paulus & Eccher

/s/ Ryan M. Paulus_____
Ryan M. Paulus         D Kan. #78276
8350 N. St. Clair Ave. Ste. 225
Kansas City, Missouri 64151
Main (816) 581-4040
Facsimile (816) 741-8889
r.paulus@hpelaw.com
ATTORNEYS FOR PLAINTIFF