# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DARYL JONES, ALICE LAMAR, and )
SARAH ROMERO, on behalf of themselves )
And all others similarly situated, )
          )
          Plaintiffs, )
          )
v. )      Case No. 14-cv-2112-TJJ
          )
WYANDOT, INC., et al., )
          )
          Defendants. )

## MEMORANDUM AND ORDER

On April 1, 2015, the Court entered an order approving the parties' settlement agreement in this case.[1]  This matter comes before the Court on Plaintiffs' Motion to Enforce the Settlement Agreement or in the Alternative Set Aside the Settlement Agreement.[2]  Plaintiffs request that the Court enter an order enforcing the parties' settlement agreement according to Plaintiffs' interpretation, which is that the agreement requires Defendant to pay qualified opt-in class members stipulated overtime for all weeks worked without excluding any weeks because of holidays or sick days.  Defendant Wyandot Center For Community Behavioral Healthcare, Inc. ("Wyandot Center")[3] filed a combined response in opposition and motion to dismiss.[4] Defendant's interpretation of the settlement agreement is that qualified opt-in class members be

---

[1] ECF No. 40. The parties consented to a magistrate judge conducting all proceedings in this case. *See* ECF No. 32.

[2] ECF No. 48

[3] Wyandot Center for Community Behavioral Healthcare, Inc. is the sole remaining defendant in this case. References throughout this Order to Defendant refer to this entity. Wyandot, Inc., PACES, Inc. and Kim Wilson Housing Inc. were also named defendants in the case, but they were previously dismissed without prejudice.  *See* Stipulation of Dismissal Without Prejudice, ECF No. 41.

[4] ECF No. 49.

paid only for each "full work week worked" (at least 40 hours) and paid time off should not be considered as hours worked.  For the reasons set out below, each of the alternative requests contained in Plaintiffs' motion is denied, and Defendant Wyandot Center's motion to dismiss is granted.

I.       **Procedural History**

Plaintiffs filed this collective action on March 7, 2014, to cure Defendants' alleged failure to pay overtime wages and for liquidated damages and attorneys' fees. Plaintiffs allege willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., ("FLSA") and several common law causes of action under various state laws.

Defendant employs case managers in the Kansas City metro area to assist clients with persistent mental health issues in various ways. The class members in this case are current and former case managers of Defendant.

Defendant denied Plaintiffs' allegations, contending that its case managers were properly classified as exempt employees under the administrative and professional exemptions.  Thus, Defendant contended Plaintiffs were exempt from the overtime provisions of the FLSA and other governing federal, state and local laws.

The parties ultimately negotiated a settlement and, on November 13, 2014, Plaintiffs filed their Unopposed Motion For Order Conditionally Certifying Settlement Class, Approving Collective Action Settlement, Directing Distribution of Class Notice and Distribution of Settlement Funds, [and related relief] ("Motion to Approve Settlement Agreement").[5] The

_____

[5] ECF No. 31

parties' purported Settlement Agreement and Full Release of All Claims[6] ("Settlement Agreement") was attached as an Exhibit to the Motion to Approve Settlement Agreement.

On January 26, 2015, the Court entered an order finding the record insufficient for it to determine whether the amount of the proposed attorney's fees sought was reasonable.[7] The Court ordered the parties to supplement the motion.

After the parties filed their supplemental memoranda addressing the Court's questions regarding the reasonableness of the proposed attorney's fees under the Settlement Agreement,[8] the Court held a telephone Status Conference on March 17, 2015.  At the conclusion of the conference, the Court allowed Plaintiffs' counsel to file an additional supplemental memorandum to address the Court's stated concerns with respect to the requested fees.  On March 30, 2015, Plaintiffs filed an Amended Unopposed Motion for Order Conditionally Certifying Settlement Class, Approving Collective Action Settlement, Directing Distribution of Class Notice and Distribution of Settlement Funds, [and related relief] ("Amended Unopposed Motion to Approve Settlement Agreement").[9] On April 1, 2015, the Court granted the relief requested and entered the parties' proposed Order Granting Plaintiffs' Amended Unopposed

---

[6] ECF No. 31-1

[7] ECF No. 33.

[8] ECF Nos. 35 and 38

[9] ECF No. 39. This amended unopposed motion modified the amount of attorney's fees to be paid under the Settlement Agreement but was, for all purposes material to the instant motion, identical to the original Motion to Approve Settlement Agreement (ECF No. 31).

Motion to Approve Settlement Agreement.[10] This included, specifically, approval of the Settlement Agreement and directives regarding class notice and distribution of settlement funds.

On July 22, 2015, Plaintiffs filed the instant motion to enforce the Settlement Agreement or, alternatively, to set it aside. Defendant filed a combined response in opposition to the motion and motion to dismiss. In its response, Defendant includes the following update on the status of the settlement:

> [B]ased on the parties' settlement, Defendant … has paid over $63,000.00 in legal fees to Plaintiffs' counsel, remitted $5,000.00 payments to each of the individually named plaintiffs, paid $12,000.00 to the Class Action Administrator for processing the settlement, taken out a loan to fund the class settlement pool, which has incurred interest payments of $1,000.00 per month for a total of $3,000.00 and counting, plus loan costs and incurred approximately $10,000.00 in legal fees in facilitating the class settlement. All monies agreed to be paid have been paid and disbursed.[11]

Plaintiffs did not file a reply disputing that the above payments have occurred and that all monies agreed to be paid under the Settlement Agreement have already been paid and disbursed. This also comports with the Court's Order Granting Plaintiffs' Amended Unopposed Motion to Approve Settlement.[12]

## II.      Plaintiffs' Argument

Plaintiffs contend Defendant has misinterpreted the Settlement Agreement and is underpaying class members who have opted-in. Plaintiffs explain their dispute with Defendant over the Settlement Agreement as follows:

---

[10] ECF No. 40. Plaintiffs state incorrectly in their Motion to Enforce (ECF No. 48 at 1) that the Court entered an order (ECF No. 33) approving their Motion to Approve Settlement Agreement on January 26, 2015.

[11] ECF No. 49 at 9.

[12] ECF No. 40.

> In administering [the] settlement, Defendant seeks to reduce each opt-ins
> settlement recovery significantly by disqualifying each opt-in from receiving
> damages for any week during the class period that they missed two or more hours
> of work during that week due to being sick or on paid vacation. Class counsel
> disagrees with Defendants' interpretation of the settlement agreement in that it
> was negotiated that the class would be paid for, forty-nine weeks a year rather
> than fifty-two, therefore vacation time and sick time was already accounted for.[13]

Plaintiffs argue that the Settlement Agreement constitutes the fully integrated agreement of the parties and should be interpreted solely based upon the four corners of the Settlement Agreement. They contend the stipulation limiting the number of work weeks per year to forty-nine (49) over a one year period and ninety-eight (98) over a two-year period makes clear that the calculation of payments to qualified opt-in class members under the Settlement Agreement was intended to take into account the number of weeks each employee worked, without excluding any weeks because of holidays or sick days.

## III.      Defendant's Argument

Defendant contends the "language relating to the calculation of the payouts is clear and unambiguous."[14] However, Defendant has a decidedly different view than Plaintiffs of the payments due to qualified opt-in class members under the Settlement Agreement. Defendant argues that these class members are entitled to payment only for "full work weeks worked," quoting language from the FLSA Plan Allocation definition and from Section III(A)(1)(c) of the Settlement Agreement.[15] Defendant also points to language included in the motion and amended motion for approval of the Settlement Agreement and other communications between counsel

---

[13] Pls.' Motion to Enforce, ECF No. 48 at 1

[14] Def.'s Resp., ECF No. 49 at 6

[15] ECF No. 39-1

regarding their agreement, as support for its interpretation of the payout provisions of the Settlement Agreement.

## IV.        Applicable Law

Under Kansas law, a settlement agreement is a type of contract and is therefore governed by contract principles.[16]  The primary objective when interpreting a written contract is to ascertain the intent of the parties at the time they entered into the contract.[17]  As a matter of commercial predictability, the law favors reasonable interpretations, and seeks to avoid "results which vitiate the purpose of the terms of the agreement to an absurdity."[18]

A court must first determine if the terms of a contract are clear or ambiguous.[19]  A document is deemed ambiguous if the language used by the parties can fairly be understood to have two or more possible meanings.[20]  Where the language is clear and unambiguous, the intent of the parties is to be "determined from the contract language without applying rules of construction."[21]  In interpreting contracts, courts cannot isolate one particular sentence or provision but instead must construe and consider the entire contract from its four corners.[22]

---------------

[16] *Ferguson v. Smith*, 63 P.3d 1119, 1121 (Kan. App. 2003).

[17] *Daggett v. Bd. of Pub. Utilities of Unified Gov't of Wyandotte Cnty./Kan. City*, 263 P.3d 847, 849 (Kan. App. 2011).

[18] *Waste Connections of Kan., Inc. v. Richie Corp.*, 298 P.3d 250, 265 (Kan. 2013).

[19] *Carrothers Constr. Co. v. City of S. Hutchinson*, 207 P.3d 231, 239 (Kan. 2009).

[20] *Arkansas La. Gas Co. v. Kansas*, 675 P.2d 369, 371 (Kan. 1984).

[21] *Carrothers*, 207 P.3d at 239.

[22] *City of Arkansas City v. Bruton*, 166 P.3d 992, 1003 (Kan. 2007).

Rather, a contract should be interpreted in light of its provisions and construed, if possible, consistent with every other provision and to give effect to all provisions.[23]

A court may consider the facts and circumstances surrounding execution of a document to clarify the parties' intent, but only if the document is ambiguous on its face.[24] In interpreting ambiguous documents, courts may consider the parties' conduct as an indication of their contracting intent.[25] Meaning is dependent upon context, therefore "related writings affect the particular writing, and the circumstances affect the whole."[26]

## V.      Legal Analysis

### A.      The Settlement Agreement is Clear and Unambiguous

The Court must first examine the express terms of the Settlement Agreement that the parties entered into. Section III(A)(1)(c) of the Settlement Agreement specifically addresses the payments to be made to class members, including the following language material to the dispute here:

> ***Individual damages are based on the number of full work weeks you worked*** during the time period covered by the lawsuit, the stipulated overtime compensation rate of nineteen dollars and twenty three cents ($19.23) ***and the stipulated number of overtime hours worked: 2 hours per full work week worked. For purposes of this Settlement and computing settlement payments to FLSA Qualified Class Members, the parties stipulate that there are forty-nine (49) work weeks in a year and ninety-eight (98) work weeks in a two-year period.***[27]

---

[23] *Daggett*, 263 P.3d at 850.

[24] *Bank of Okla. v. Fid. State Bank & Trust Co.*, 623 F. Supp. 479, 486 (D. Kan. 1985).

[25] *First Nat'l Bank of Olathe v. Clark*, 602 P.2d 1299, 1304 (Kan. 1979).

[26] Restatement (Second) of Contracts § 202 cmt. d (1981).

[27] ECF No. 39-1 at 11(emphasis added).

Plaintiffs are essentially arguing that the Settlement Agreement is clear and unambiguous, when they ask the Court to interpret the Settlement Agreement solely on the basis of the four corners of the agreement. Defendant also argues that the Settlement Agreement is clear and unambiguous but discusses at length extrinsic documents and evidence beyond the four corners of the Settlement Agreement. Yet, Plaintiffs and Defendant urge the Court to interpret their agreement in significantly different ways.

Plaintiffs do not cite any particular provision of the Settlement Agreement to support their argument, but they appear to be focused on the highlighted language in the last sentence quoted above from Section III(A)(1)(c). They argue that, when the parties stipulated to 49 work weeks in a year and 98 work weeks in a two-year period, that stipulation was intended to account for vacation time and sick time, in lieu of any consideration of the actual number of full work weeks worked. Plaintiffs contend "it was negotiated that the class would be paid for, forty-nine weeks a year rather than fifty-two."

Defendant, on the other hand, focuses on the earlier highlighted language, arguing that it limits class members' compensation to full work weeks worked. Defendant also points to paragraph 11 under Section I of the Settlement Agreement, which includes the following definition:

> "FLSA Plan of Allocation," means the pro rata apportionment of the Anticipated Global Settlement Amount based on the overtime worked by each FLSA Collective Class Member…with individual payments agreed to herein, applied to the Global Settlement Amount based on a formula taking into account the number *of full work weeks (Monday through Friday) worked* by you during the FLSA Covered Period, the stipulated number of hours of overtime worked and the stipulated overtime compensation rate….[28]

---

[28] *Id.* (emphasis added).

Defendant also points to the Notice Of FLSA Collective Action Settlement (Exhibit B to the Settlement Agreement), which was sent to class members and included the following summary of their settlement payments:

> Your Settlement Payments will be subject to Court approval and is based on a formula that takes into account a number of factors including *the number of full work weeks you actually worked during the preceding two-year time period* preceding the date your Consent form is filed with the Court, the overtime compensation rate of Nineteen Dollars and Twenty-Three Cents ($19.23) *and the stipulated number of hours of overtime worked each week in the preceding two-year period: 2 hours per full work week worked.* For purposes of this Settlement and computing settlement payments to FLSA Qualified Class Members, the parties stipulate that there are forty-nine (49) work weeks in a year and ninety-eight (98) work weeks in a two-year period.[29]

Section III(A)(1)(c) of the Settlement Agreement expressly states that individual damages will be based on the number of full work weeks worked and the stipulated number of overtime hours worked of 2 hours per full work week worked. This is consistent with the FLSA Plan of Allocation definition, which also incorporates the full work weeks worked language. Also, notably, this definition does not include any reference to the stipulation of work weeks per year upon which Plaintiffs rely. These provisions are also consistent with the Notice provided to class members, which highlighted the limitation to full weeks worked even further, stating that the formula will take into account "the number of full work weeks you **actually worked**…"[30] All of these provisions are consistent and clearly limit the calculation of class members' compensation to the full work weeks that they actually worked.

---

[29] ECF No. 39-2 at 4 (emphasis added).

[30] *Id.*

Notwithstanding the above provisions, and without attempting to reconcile them, Plaintiffs argue that they should be paid overtime for 49 weeks per year during weeks they worked, regardless of whether they worked full work weeks. But the stipulation Plaintiffs rely upon does not state that the parties stipulate the number of "full" work weeks worked in a year is 49 or in two years is 98. Thus, the interpretation Plaintiffs urge the Court to adopt would have the Court disregard the provisions of the Settlement Agreement which clearly call for calculation of payments based upon full work weeks worked.

This the Court will not do. Instead, the Court must construe every provision of the Settlement Agreement, if possible, as consistent with every other provision and to give effect to it all. Viewing the Settlement Agreement as a whole, it is clear and unambiguous that the agreement was intended to limit Plaintiffs' overtime compensation to full weeks worked.[31] The Settlement Agreement and the Notice of it consistently and repeatedly incorporate the "full work weeks worked" limitation on compensation.

This interpretation is also consistent with well-established law. As Defendant notes, under the FLSA, no employee is eligible for overtime unless he/she actually works more than 40 hours in a workweek.[32] Plaintiffs do not rebut this point, nor do they offer any explanation or justification for why the Plaintiffs should receive compensation under the Settlement Agreement for overtime pay if they did not actually work a full work week.

---

[31] The stipulation regarding number of work weeks, upon which Plaintiffs rely, can be read as consistent with the full work weeks worked language. Essentially the parties stipulated that all Plaintiffs would not have worked a full work week at least three weeks each year. Presumably, the stipulation was intended to set an outer limit on the number of weeks for which class members could receive compensation for unpaid overtime. As Defendant noted (ECF No. 49 at 7), there would actually be "many other weeks when an employee would not work a full work week, namely the approximately ten (10) work weeks of the year where Defendant recognizes a legal holiday."

[32] 29 U.S.C. § 207(a)(1).

10

Accordingly, the Court finds based upon its careful review of the four corners of the Settlement Agreement, that the agreement is clear and unambiguous. Defendant has correctly interpreted and applied the Settlement Agreement in accordance with the clearly expressed intent of the agreement.

**B.    The Extrinsic Evidence Provided by Defendant Further Supports the Court's Conclusion**

The Court, having found the Settlement Agreement clear and unambiguous, bases its holding on its interpretation of the four corners of the Settlement Agreement, as discussed in the preceding section.  However, the facts and circumstances surrounding execution of the Settlement Agreement further bolster Defendant's interpretation of the class member payment calculation.[33] Defendant points out that once the parties reached a tentative settlement, Plaintiffs' counsel provided the first draft of an unopposed motion for approval of the settlement agreement. That initial draft, penned by Plaintiffs' counsel and sent to Defendant's counsel on or about October 22, 2014, included the following provision in a summary of the settlement terms:

> Defendant shall pay each Class Member who opts-in the collective action two (2) hours of overtime back pay at a [sic] overtime rate of nineteen dollars and twenty three cents ($19.23) *for every full week that the Class Member worked* in the preceding two years . . . .[34]

---

[33] If the Court had determined the Settlement Agreement was ambiguous, the facts and circumstances set out in this section would have been considered previously. In interpreting an ambiguous document, the court may consider the facts and circumstances surrounding execution of a document, the parties conduct, and related writings affecting the particular document. *See Waste Connections*, 298 P.3d at 264 (if written contract's language is ambiguous, extrinsic or parol evidence may be considered to construe it).

[34] ECF No. 49-1 at 9 (emphasis added).

Plaintiffs' counsel carried over this same summary of settlement terms in a revised version of the unopposed motion he sent to Defendant's counsel on or about October 30, 2014.[35]

As for the actual Settlement Agreement, the full work week language was not included in the draft that Plaintiffs' counsel sent to Defendant's counsel on or about November 11, 2014.[36] However, Defendant's counsel returned a redlined version of the Settlement Agreement to Plaintiffs' counsel on or about November 13, 2014, adding the "full work" weeks language to the "FLSA Plan of Allocation" definition and to Page 6, Section III(A)(1)(c) of the Settlement Agreement.[37] Plaintiffs' counsel approved these changes in the redlined version from Defendant's counsel.

Defendant's counsel also added the full work week language in a redlined version of the Notice Of FLSA Collective Action Settlement.[38]  Plaintiffs approved this revised Notice, incorporating the full work week language, as well.

The Court finds compelling the fact that Plaintiffs' counsel was the original source of the very language limiting payments under the Settlement Agreement, which Plaintiffs now dispute. Plaintiffs' counsel provided the "***for every full week that the Class Member worked*** in the preceding two years . . ." language in the first draft of the unopposed motion for approval of the settlement agreement, in a revised version of the unopposed motion, and in the unopposed motion and amended unopposed motion ultimately filed with the Court.

---

[35] ECF No. 49-2 at 11.

[36] ECF No. 49-3 at 6 (This draft of the settlement agreement's definition of "FLSA Plan of Allocation" stated that the formula would take into account "the number of weeks worked by you during the FLSA Covered Period").

[37] ECF No. 49-4 at 4 and 8.

[38] ECF No. 49-4 at 23.

Viewed in this context, the parties' intent at the time the agreement was reached was to limit overtime payments to class members under the Settlement Agreement to full weeks worked. This conclusion is further supported by the genesis of the Settlement Agreement itself. After Plaintiffs' counsel included the full weeks worked language in the unopposed motion, Defendant's counsel added the same substance in two provisions of the Settlement Agreement and in the Notice of the Settlement. This additional language was not buried or hidden somewhere in the documents, rather it was redlined so that Plaintiffs' counsel could clearly see it. It is hard to imagine that Plaintiffs' counsel missed the language when reviewing the revised documents. Plaintiffs' counsel makes no such claim.

The Court also finds compelling the fact that **Defendant's** counsel, not Plaintiffs', was apparently the scrivener of the stipulation regarding number of weeks in the one and two year periods subject to the agreement. Defendant's counsel added the stipulation at the end of the full work week language. The Court cannot reasonably interpret this stipulation, drafted by Defendant's counsel, as intended to obligate Defendant to pay each opt-in class member for 49 weeks per year and/or 98 weeks per year regardless of whether full weeks were worked, an interpretation to which Defendant's counsel vehemently objects. Rather, it is reasonable to interpret this stipulation as intended to set an outer limit on the number of full weeks worked that any class member could claim, taking into account the likelihood that all would have at least 3 weeks of vacation and/or sick leave throughout a year.

Finally, the Court finds compelling the belated filing of Plaintiffs' motion. The horse was already out of the barn long before Plaintiffs' counsel raised the argument that class members should have been compensated based upon the stipulated weeks worked rather than based upon full weeks worked.  Indeed, Plaintiffs' counsel authorized Defendant's counsel to move ahead

with issuing checks to class members. He did so even *after* Defendant's counsel sent e-mails highlighting that compensation would be based upon full weeks worked; Plaintiffs' counsel contacted some opt-in class members to confirm their days off; and Defendant's counsel e-mailed summaries of workweeks to be paid to each opt-in class member, showing numerous weeks class members would not be paid because of holidays or sick leave.[39]

Notably, on July 13, 2015, Plaintiffs' counsel e-mailed Defendant's counsel: "I just got off the phone with the last person. Everyone verified the days they were off from Work. We can move ahead with issuing the checks."[40] This e-mail clearly indicates that Plaintiffs' counsel understood class members were not going to be paid for days when they were off work, and that he approved issuance of settlement checks on that basis.

### C.   Plaintiffs Fail to Establish Any Legal Basis for Setting Aside the Settlement Agreement

Plaintiffs alternatively request that the Settlement Agreement be set aside because both parties were mistaken as to what constituted a "full work week" and therefore there was no "meeting of minds" necessary to form a binding contract.  Defendant disputes Plaintiffs' allegation that both parties were mistaken.  Defendant argues that Plaintiffs' counsel, who has handled several class action employment cases, should have known what constitutes a full work week when he included this language in his draft motions to approve the settlement and when he asked for clarification of Defendant's redlined changes incorporating the full weeks worked language in the other draft settlement documents. Defendant contends that the Settlement

---

[39] *See* ECF Nos. 49-6, 49-7, 49-8, 49-9, 49-10, 49-11, and 49-12.

[40] ECF No. 49-12.

Agreement was a fair compromise and settlement of disputed claims which was approved by the Court and is consistent with the relief allowed under the FLSA.

"It is an elemental rule that the law favors compromise and settlement of disputes, and generally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it."[41] However, as an exception to the rule, it is well settled that a compromise settlement may be set aside on the ground of mutual mistake of the parties.[42] The Kansas Supreme Court has described the general rule as follows:

> Since the parties assume the risk of mistake as to matters intended to be resolved by the compromise, a compromise and settlement is not defective merely because the parties were ignorant or mistaken as to the full extent of their rights.  In order for a mistake to have legal significance and to constitute a basis for invalidating a compromise, it must be based upon the parties' unconscious ignorance; it must not relate to one of the uncertainties of which the parties were conscious and which it was the purpose of the compromise to resolve and put at rest. A person who enters into a compromise, consciously ignorant of a fact but meaning to waive all inquiry into it, is not mistaken, in the legal sense; in such a situation it is the intention of the parties to accept the consequences of uncertainty.[43]

In this case, there has been no allegation of bad faith or fraud that would justify setting aside the Settlement Agreement.  Nor was there a *mutual* mistake about the Settlement Agreement, only a unilateral one by Plaintiffs.  Defendant clearly intended that the qualified class members be compensated for overtime only during full weeks worked and Defendant repeatedly highlighted and reminded Plaintiffs' counsel of the language he drafted to this effect.

For Plaintiffs' unilateral mistake to be a valid basis for setting aside the Settlement Agreement, it must be based upon "unconscious ignorance."  Plaintiffs in this case were fully

---

[41] *Krantz v. Univ. of Kan.*, 21 P.3d 561, 567 (Kan. 2001).

[42] *Id.* (citing *Matter of Thompson's Estates*, 601 P.2d 1105, 1108 (Kan. 1979)).

[43] *Thompson's Estates*, 601 P.2d at 1108–09.

aware or conscious of the inclusion of the "full work weeks worked" language.  They were not ignorant of this provision of their settlement agreement.  They knew or should have known from the unambiguous language in the Settlement Agreement and other related documents that they were receiving distributions based only upon full weeks worked.  The mistake or misunderstanding articulated by Plaintiffs is not grounds to set aside the Settlement Agreement. Under the circumstances present here, the Court denies Plaintiffs' request to set aside the Settlement Agreement.

**IT IS THEREFORE ORDERED THAT** Plaintiffs' Motion to Enforce the Settlement Agreement or in the Alternative Set Aside the Settlement Agreement (ECF No. 48) is DENIED.

**IT IS FURTHER ORDERED THAT** Defendant Wyandot Center For Community Behavioral Healthcare, Inc.'s Motion to Dismiss (ECF No. 49) is GRANTED.  Plaintiffs' remaining FLSA and state law claims against Defendant Wyandot Center are hereby dismissed with prejudice.

**IT IS FURTHER ORDERED THAT** each party to bear its own costs related to this motion.

IT IS SO ORDERED.

Dated this 30th day of September, 2015.

_s/ Teresa J. James_
Teresa J. James
U.S. Magistrate Judge